## WILLIAM SHIMMIN *versus* JOHN N. INMAN.

The statutes of this State have regarded the sale of the estate assessed, to be one mode of collecting taxes. And the provisions of the second section of the statute of 1831, c. 501, were continued in force by the tenth section of the act of amendment to the Revised Statutes, so far as it respected sales of land for the payment of taxes, assessed before the Revised Statutes took effect.

When the law provides, that the assessors shall set forth in their lists "the number of acres of unimproved land, which they may have taxed on each non-resident proprietor of lands, and the value at which they have estimated the same," if several such lots are taxed, the number of acres in each lot, and the valuation thereof should be stated separately.

Where a tax is assessed on unimproved lands of non-resident proprietors whose names are known and stated, the collector must give the name of the owner in his advertisement.

If taxes are assessed upon several lots of unimproved land, as the property of non-resident owners whose names are unknown, it is essential to the validity of the tax, that each lot should be valued and assessed separately.

When the statute requires, that the collector shall record and return to the town treasurer "his particular doings in the sale of unimproved lands of non-resident proprietors" within thirty days after the sale, he must comply with the provision, or the sale will be invalid.

A mere statement by the collector, that on a certain day " C. D. bought of D. W. collector, lots of land as follows, (describing three lots by their numbers,) containing 230 acres, $5,82.   Recd. payment, D. W. Collector of H. for the year 1835," is not a sufficient return.

TROVER for a quantity of mill logs, cut by the defendant and taken from lots numbered 16, 17 and 18 on Penobscot river, in the town of Howland.

The plaintiff proved title in himself to these lots, by deed from the then proprietor thereof in 1824.

The defendant claimed the right to cut the timber as the owner of the lots, and claimed to have title, through a mesne conveyance, under a deed from Daniel Wood, collector of taxes for the town of Howland for 1835, to one Charles Davis. This deed was dated Feb. 6, 1836. If a title to the land, which was at that time unimproved, passed by this deed, the defence was made out, and if it did not, the plaintiff was entitled to recover.

At the trial before TENNEY J. the defendant introduced the

deed of the collector, proceedings of the town in raising the money, and in the choice of the assessors and collector of taxes, their qualification to act, and their assessment of the taxes. Their admission was objected to at the trial. The case then states that the defendant also introduced the records of assessment for 1835, signed by the assessors, in which is the following : —

| | No. lots. | Range or Division. | No. of acres. | value. | St. & Co. tax. | Town tax. | Deficiency. 1834. | Sum Total. |
|---|---|---|---|---|---|---|---|---|
| | | | | $ c. | $ c. | $ c. | | $ c. |
| Wm. Shimmin or unknown. | 16 17 18 | on Penob. River. | 210 | 210,00 | ,61 | 3,22 | | 3, 83. |

Also warrant to the collector signed by the assessors, dated May 28th, 1835. Also assessments by the assessors, and by them committed to the collector in which is the following : —

| | No. lots. | No. acres. | value. | St. & Co. tax. | Town tax. | Def. Highway, 1831. | Sum Total. |
|---|---|---|---|---|---|---|---|
| | | | $ c. | $ c. | $ c. | | $ c. |
| Wm. Shimmin of Boston, or unknown. | 16 17 18 | 82 78 80 | 230,00 | ,61 | 3,22 | | 3, 83 |

Also the Eastern Argus was admitted to be the State paper, and the Eastern Republican a paper printed in the county, and it was admitted that notice of the sale was duly given unless "Sherman or unknown," instead of "Wm. Shimmin or unknown," may be considered erroneous.

It was admitted that a paper, called a return, of which the following is a copy, was filed with the treasurer within thirty days after the sale.

"Howland, February 6, 1836.

"Charles Davis

"Bought of Daniel Wood, Collector, lots of land as follows, viz. —

"On Penobscot river, No. of lots.   Range.   No. of acres.   Taxes & charges,

16      00
17      00
18      00

230          $5,82

"Howland February 10th, 1836,

"Received payment,

"Daniel Wood, Collector of Howland for the year 1835."

The presiding Judge instructed the jury, that the defendant had not shown a title in himself to the lots of land in contro-

versy. The verdict was for the plaintiff, and the defendant filed exceptions.

*Cutting*, for the defendant, said that in consequence of the difficulty in sustaining a tax title, the Stat. of 1831, c. 501, was passed, whereby it only became necessary, to sustain such title, to produce the collector's deed, the assessment and warrant to the collector, and to show that the collector advertised according to law. Although this statute was repealed when the revised statutes went into effect, its provisions were retained by the act of amendment. And if it were otherwise, the same statute, was enacted before this trial took place, and applied to all cases, before as well as after its passage.

He contended, however, that if necessary to prove the legality of the previous proceedings, it had been done ; and also, that the proceedings of the collector in advertising and selling the property, and in making his return to the treasurer had been legal. The error in the notice, in substituting *Sherman* for *Shimmin*, was wholly immaterial, as the land was taxed as if the owner was unknown, and the name might have been wholly omitted. If the return to the treasurer is not in exact form, the omission to perform a subsequent act cannot affect the validity of the sale.

*Rowe*, for the plaintiff, contended, that the statute of 1831, affecting the remedy only, or mode of proof, was not in force at the time of this trial. This act related merely to the evidence in actions after the sales, and not to the collection of taxes ; and therefore was not saved by the tenth section of the act of amendment. And he made various objections to the proceedings in raising the money, choosing and qualifying the assessors and collector, and in the assessment of the taxes.

If the tax was assessed, as where the owner of the land is known, then the advertisement was wholly defective, as the name of the owner is not given. And if it is to be considered to be taxed, as where the owners are unknown, then the collector wholly failed to comply with the requirements of the law in advertising. He also insisted, that a return, " of his partic-

ular doings in the sale," was indispensable; and that the paper produced as such was no compliance with the provisions of the statute. *Porter* v. *Whitney*, 1 Greenl. 306.

The opinion of the Court was drawn up by

SHEPLEY J. — The property of the plaintiff in the mill logs must depend upon his title to the lots of land, on which they were cut. Those lots were conveyed to him by William Hammatt on November 3, 1824. The defendant shows that they were sold and a conveyance of them made to Charles Davis by a collector of taxes of the town of Howland, on February 6, 1836, to collect taxes assessed upon them in the year 1835.

The act of March 12, 1831, provided that it should be sufficient for a party claiming under such a sale to produce in evidence the collector's deed, the assessments signed by the assessors, and their warrant to the collector, and to prove, that the collector complied with the requisitions of law in advertising and selling the estate. That act was repealed by the general repealing act of the Revised Statutes. The tenth section of the act of amendment of those statutes provided, that all laws now in force relating to the collection of taxes shall remain in force for all the purposes of collecting any taxes, which may have been assessed prior to the time, when the Revised Statutes shall take effect. It is said, that this provision does not declare, that the kind of proof to establish the validity of such a conveyance should continue to be the same; that the former acts are continued in force only for the purpose of collecting taxes. Our statutes have regarded the sale of the estates, assessed, to be one mode of collecting taxes; and the proof that such sale has been legally made, as an essential provision to induce persons to become purchasers and to pay the taxes. Hence it is found, that the provisions respecting the kind of proof were contained in "an additional act concerning the assessment and collection of taxes." When a similar provision was made respecting the proof of sales made under the act of March 22, 1844, it was incorporated into an act "regulating the collection of taxes on real estate

in incorporated places." It appears to have been the intention to continue all the provisions contained in the acts then in force, providing for the collection of taxes, so far as it respected taxes assessed before the Revised Statutes took effect. The inquiry in this case must therefore be limited to a consideration of the questions, whether the assessment appears to have been legally made ; and whether the collector in making the sale complied with the requisitions of the law.

The fourth section of the tax act of the year 1835 provided, that the assessors should set forth in their lists "the number of acres of unimproved land, which they may have taxed on each non-resident proprietor of lands, and the value at which they have estimated the same." This may be done, when the owner is known, if all his lands are valued together, and assessed together. But when the owner is unknown, if several lots were valued and assessed together, which might prove to be owned by different persons, there would be no compliance with that provision requiring the number of acres assessed to each non-resident proprietor to be stated. The eighth section of the same act provided, that the assessors should make their lists in substance, as should be prescribed by the treasurer of the State. The assessors in this instance probably supposed, that they had done so. The numbers of each lot were stated in one column ; in another the whole number of acres, but the number of acres contained in each lot was not stated ; in another the valuation was made upon the whole and not upon each lot ; and the assessment was made upon the whole and not upon each lot separately. The lands were advertised by the collector as assessed to " Sherman or unknown." They had been assessed to " Wm. Shimmin or unknown." This does not show a compliance with the provision of statute c. 116, § 30, which required, that he should state the names of the proprietors when known, if the assessment be considered as made on lands, the owner of which was known. If the assessment can only be considered (as it probably must be) as made on lands of unknown proprietors, then the collector was required by that section to " publish the sum of the taxes on

the several rights, numbers of lots, or divisions." When the assessment has been made on " rights" or " divisions," it can only be required, that such right, division, or tract of land, should be described, valued, and taxed alone and not with other lands. But when it is made upon lots, if they are not valued and taxed separately, the collector cannot advertise the sum of the taxes on the several numbers of lots as required.

There may be a great difference in the value of the lots, and when taxed, the owners being unknown, the lots may be owned by different persons; and if a joint valuation and taxation were allowed, one owner could not ascertain the amount of tax on his own land, or pay it, or redeem the land, when sold, without paying the tax on all the other lands assessed with it, and with which he had no connection. A fair construction of the statutes seem to require, that each lot should be valued and assessed separately, when assessed as lands the owners of which are unknown. Although in this case the several lots appear to have been owned by one person, that fact cannot dispense with the law, or excuse a deviation from it when the assessment was made as upon lands of unknown persons.

There is another defect. The collector does not appear to have complied with the requisitions of law by recording and returning to the town treasurer " his particular doings in the sale of unimproved lands of non-resident proprietors," within thirty days after the sale, as required by the act of March 6, 1826. The paper returned by him to the treasurer is in no respect a proper compliance with that provision of the statute. The soundness of the argument cannot be admitted, that the neglect of the collector to do a subsequent act should not prejudice the title of the purchaser. For his title is made to depend upon proof of a compliance by the collector with the requisitions of the law.

*Exceptions overruled.*